Daniel A. Hill
Bar No. 963072
daniel.hill@adamshillhess.com
ADAMS, HILL & HESS
339 Washington St. SE
Salem, OR 97302
Telephone: (503) 399-2667
Facsimile: (503) 399-1758

Michael R. Ross*
Tyson C. Langhofer*
mross@ADFlegal.org
tlanghofer@ADFlegal.org
ALLIANCE DEFENDING FREEDOM
20116 Ashbrook Pl., Ste. 250
Ashburn, VA 20147
Telephone: (571) 707-4655
Facsimile: (571) 707-4656

David A. Cortman*
dcortman@ADFlegal.org
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., Ste. D-1100
Lawrenceville, GA 30043
Telephone: (770) 339-0774
Facsimile: (770) 339-6744

*Pro Hac Vice application concurrently filed*

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| CHEMEKETA STUDENTS FOR LIFE, EMMA HOWELL, and MARCOS SANCHEZ, | Civil Case No. _____ |
| *Plaintiffs,* | |
| v. | |
| Members of the Chemeketa Board of Education—KEN HECTOR, RON PITTMAN, ED DODSON, NEVA HUTCHINSON, JACKIE FRANKE, DIANE WATSON, and BETSY EARLES—all individually and all in their official capacities as members of the Chemeketa Board of Education; JESSICA HOWARD, President of Chemeketa Community College, individually and in her official capacity; JIM EUSTROM, Vice President of Chemeketa Community College, individually and in his official capacity; MANUEL GUERRA, Executive Dean of Chemeketa Community College, individually and in his official capacity; MIKE EVANS, Dean of Student Retention & College Life of Chemeketa Community College, in his official and individual capacities; and JOEL GISBERT, Civic Engagement Coordinator of Chemeketa Community College, in his official and individual capacities, | PLAINTIFFS' VERIFIED COMPLAINT  DEMAND FOR JURY TRIAL |
| *Defendants.* | |

### PLAINTIFFS' VERIFIED COMPLAINT

Plaintiffs Chemeketa Students for Life, Marcos Sanchez, and Emma Howell, by and through counsel, and for the Verified Complaint against Defendants, hereby state as follows:

### INTRODUCTION

1.    The cornerstone of higher education is the ability of students to participate in the "marketplace of ideas" on campus. That marketplace depends on free and vigorous debate and expression between students—debate and expression that is

spontaneous, ubiquitous, and often anonymous—and is often carried out through spoken words, flyers, signs, and displays.

2.    By policy and practice, Chemeketa Community College ("the College") claims the unchecked right to restrict the free speech rights of students who desire to engage in expressive activity outdoors on its campus. The College claims to encourage free expression on campus, but if students wish to speak in any outdoor area at the College, they must first get approval from the Office of Student Retention and College Life. Students must submit a form at least two weeks in advance, revealing, among other things, the content and nature of their intended expressive activity. By requiring this disclosure, the College fails to protect students against content and viewpoint discrimination and requires its officials to evaluate the content and viewpoint of student expression. These policies and practices disable and chill protected student expression.

3.    These policies and practices violate Plaintiffs' fundamental and clearly established rights under the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment.

## JURISDICTION & VENUE

4.    This is a civil rights action that raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

5.    This Court has original jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1343.

6.    This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and FED. R. CIV. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

7.    Venue is proper in this district and this division pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and because all of the acts giving rise to this action occurred in this district and this division.

PLAINTIFFS

8.    Plaintiff Marcos Sanchez is a current, full-time student at the College.

9.    Mr. Sanchez enrolled in the College in the fall of 2018 and has remained a student at the College every term since then.

10.    Mr. Sanchez is a member of Chemeketa Students for Life and currently serves as its president.

11.    Plaintiff Emma Howell is a current, full-time student at the College.

12.    Ms. Howell enrolled in the College in the fall of 2018 and has remained a student at the College every term since then.

13.    Ms. Howell is a member of Chemeketa Students for Life and currently serves as its co-President.

14.    Plaintiffs Sanchez and Howell desire to engage in expressive activities for themselves and through Students for Life. If the College policies permitted them to do so, they would express their views on a variety of subjects in many of the common outdoor areas of campus.

15.    If the College policies permitted them to do so, Plaintiffs Sanchez and Howell would also spontaneously express their views on a variety of subjects.

16.    Plaintiff Chemeketa Students for Life ("Students for Life") is an unincorporated expressive association made up of Chemeketa Community College students.

17.    Students for Life is a recognized student organization at the College.

18.    Students for Life is a student-led, non-partisan, pro-life expressive student organization and is not affiliated with any particular political party or religious belief.

19.  Students for Life is affiliated with Students for Life of America, a non-partisan organization with over 1,200 groups in grade schools, colleges, and medical and law schools across the country.

20.  Part of Students for Life's mission is to create a culture of life, love, and compassion at Chemeketa by educating student peers on pro-life topics and actively promoting the right to life for all persons (pre-born and born).

21.  Part of Students for Life's mission is to be an expressive student organization at the College and to protect its members' constitutional rights on campus.

22.  To advance its mission, Students for Life desires to speak on the College's campus.

23.  Plaintiffs desire to express their message on the College's campus verbally, through signs, flyers, pamphlets, images, peaceful demonstrations, information tables, and by inviting speakers to campus.

24.  Plaintiffs want to use these means of expression to engage their fellow students about the value of human life in the hope of persuading their colleagues to join them in valuing human life from conception until natural death.

25.  Plaintiffs also want to use these means of expression to provide practical benefits to the Chemeketa campus community, including resources for pregnant students such as information about local pregnancy care centers and the assistance that they can provide.

26.  When engaging in these expressive activities, Plaintiffs will discuss political, religious, social, cultural, scientific, and ethical topics and ideas.

27.  If Plaintiffs succeed in this lawsuit, they will be able to conduct expressive activities in the public fora of campus without having to comply with arbitrary restrictions, without exposing themselves to potential fees, academic sanctions, or legal consequences, and without having to modify their expression to access these fora.

28.    Chemeketa Students for Life brings this suit on behalf of itself as a registered student organization at the College and on behalf of its individual student members.

DEFENDANTS

29.    Chemeketa Community College is a public college with a campus in Salem, Oregon, and it is organized and existing under the laws of the state of Oregon.

30.    Defendants Ken Hector, Ron Pittman, Ed Dodson, Neva Hutchinson, Jackie Franke, Diane Watson, and Betsy Earles are, and were at all relevant times, members of the Chemeketa Board of Education (collectively, "Board Defendants").

31.    Among other duties, Board Defendants "[c]ontrol use of and access to the grounds" and adopt and authorize policies that govern students at the College. OR. REV. STAT. § 341.290(2), (4), (16); Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1; Ex. 4 at 1; Ex. 5 at 1; Ex. 6 at 2.

32.    The Board Defendants oversee Chemeketa Community College, a public community college with over 10,000 students. Ex. 7 at 4.

33.    Each Board Defendant is responsible for enacting, amending, enforcing, and repealing the Chemeketa Board of Education's policies, including those challenged here. Ex. 1 at 1; Ex. 2 at 1; Ex. 3 at 1.

34.    All changes in campus policy concerning expressive activity are made only with the prior approval of the Board Defendants. Ex. 5 at 1.

35.    Defendant Jessica Howard is, and was at all relevant times, the President of the College.

36.    The Board Defendants are responsible for hiring and directing Defendant Howard on matters of College policy.

37.    The Board Defendants have delegated to Defendant Howard plenary power to "administer[] the laws and board policies governing the college" and the "responsibility to develop and administer procedures necessary to the operation of the

college." Ex. 8 at 1.

38. Defendant Howard has authority to vest subordinate officials with administrative authority. Ex. 8 at 1; Ex. 9 at 1.

39. Thus, Defendant Howard, through the Board, is responsible for promulgating, implementing, and enforcing the College's policies, procedures, and practices that restrict Plaintiffs' speech along with the speech of other students, including those challenged here.

40. Defendant Howard, through the Board, also has the authority to review, approve, or reject the decisions of other College officials implementing the policies, procedures, and practices challenged here.

41. All changes in College policy concerning expressive activity are made only with the prior consultation and approval of Defendant Howard. Ex. 5 at 1.

42. Defendant Eustrom is the Vice President of Chemeketa and oversees the office of Instruction & Student Services, Ex. 10 at 1; Ex. 11 at 2, which includes the office for Student Development & Learning Resources. Ex. 11 at 6.

43. Defendant Manuel Guerra is the Executive Dean of the College and is in charge of the office of Student Development & Learning Resources, which includes the office of Student Retention & College Life. Ex. 11 at 10; Ex. 12 at 1–2.

44. Defendants Howard, Eustrom, and Guerra authorized, approved, or implemented the policies, procedures and practices that restrict Plaintiffs' speech along with the speech of other students and which are challenged here.

45. Defendants Howard, Eustrom, and Guerra failed to stop any of the College's officials from applying these policies, procedures, and practices against the Plaintiffs.

46. Defendant Mike Evans is the Dean of Student Retention & College Life at the College and is in charge of the office of Student Retention and College Life, which is responsible for approving, modifying, or denying requests for students to speak on campus. Ex. 11 at 10.

47.    Defendant Joel Gisbert is the Civic Engagement Coordinator for the College and is the primary point of contact for students who wish to schedule a time and place to speak on campus. Ex. 13 at 6.

48.    Defendant Gisbert is responsible for enforcing the College's policies, procedures, and practices that are challenged in this suit.

49.    Defendant Howard supervises Defendants Eustrom, Guerra, Evans, and Gisbert.

50.    Defendant Eustrom supervises Defendants Guerra, Evans, and Gisbert.

51.    Defendant Guerra supervises Defendants Evans and Gisbert.

52.    Defendant Evans supervises Defendant Gisbert.

53.    Defendants Howard, Eustrom, Guerra, and Gisbert did not instruct College personnel, including other Defendants, to change or alter the policies and practices governing student expression on campus, including the policies and practices challenged herein, to comply with constitutional mandates.

54.    Each Defendant is sued both in his or her official and individual capacities.

FACTUAL ALLEGATIONS

I.    **Plaintiffs' Desired Speech and Expression**

   A. **Marcos Sanchez's and Emma Howell's Desired Speech and Expression**

55.    Marcos Sanchez and Emma Howell are professing Christians with sincerely held religious beliefs.

56.    Mr. Sanchez and Ms. Howell believe that all human beings are created in the image of God from their conception and, as a result, should be treated with dignity and respect (including protection by law) from conception until natural death.

57.    Mr. Sanchez and Ms. Howell also believe that all unjustified homicide is morally wrong.

58.    Mr. Sanchez and Ms. Howell believe that abortion is an unjustified

homicide—the destruction of an innocent life—and is therefore morally wrong.

59. Mr. Sanchez and Ms. Howell believe that engaging in immoral acts is harmful to the person undertaking the action, not just someone who may be hurt by the consequences of the action.

60. Therefore, Mr. Sanchez and Ms. Howell believe that the innocent unborn child and the mother are both harmed by abortion.

61. Mr. Sanchez and Ms. Howell believe that it is their moral duty to communicate the moral wrong and grievous harm that abortion causes to children and their mothers in the hope that mothers will choose not to have abortions and that people will support legal restrictions or prohibitions on abortion.

62. Mr. Sanchez and Ms. Howell do not seek financial gain through their pro-life advocacy.

63. Mr. Sanchez and Ms. Howell act on the basis of their religious and moral convictions and their desire to protect children and their mothers.

64. Mr. Sanchez and Ms. Howell believe that peacefully engaging with other students on the College's campus verbally, with signs, pictures, pamphlets, or other means is an essential way for them to fulfill their moral obligation to work to end abortion.

65. Mr. Sanchez and Ms. Howell believe that using pictures and literature about abortion is essential to their ability to persuade others that abortion is the termination of an innocent human life and dispel misconceptions about abortion, like the dehumanizing idea that abortion is nothing other than destroying a "clump of cells."

### B. Chemeketa Students for Life's Desired Speech and Expression

66. Chemeketa Students for Life advocates for the preservation of innocent human life from conception until natural death from a non-partisan, non-sectarian position.

67. Students for Life affirms that, from a bioethical and scientific perspective,

the best definition for human life affirms that life begins at conception.

68.    As a result, Students for Life holds that abortion is the destruction of an innocent human life.

69.    Students for Life believes that all innocent human life should be protected by law.

70.    Therefore, Students for Life opposes legal abortion.

71.    Students for Life endeavors to persuade students on the College's campus to adopt the pro-life position on protecting the innocent from conception until natural death through engagement with Students for Life's members, displaying signs, distributing pamphlets, hosting speakers, and other means.

72.    In addition to engagement on moral and scientific ideas, Students for Life has the practical goal of transforming campuses into places that support pregnant and parenting students.

73.    Plaintiffs' beliefs about human dignity and the sanctity of life also commit them to peaceful speech and advocacy.

74.    Plaintiffs have not, and would not, engage in expression on the College's campus that would physically obstruct other students or otherwise interfere in their attempts to secure an education.

75.    Therefore, Students for Life also instructs its members not to physically obstruct students or otherwise interfere with their educational activities. Students for Life does not allow its members to conduct their activities in a way that will disrupt the College's educational environment generally.

76.    Plaintiffs have not, and would not, in the course of their expression, pursue or harass any person who manifests unwillingness to engage with them in peaceful dialogue.

77.    Students for Life instructs its members not to pursue or harass any person who manifests an unwillingness to engage with them in peaceful dialogue.

### C. Plaintiffs' Desired Expressive Activity

78.   Plaintiffs desire to engage in spontaneous expression in the outdoor areas of Chemeketa's campus.

79.   Plaintiffs believe that being able to display signs, speak with students, provide them with literature, or otherwise engage in peaceful expressive activity at any time that the campus is open and in any outdoor area that may present an opportunity without impeding the College's educational mission is essential in order to effectively communicate their message.

80.   Plaintiffs cannot effectively communicate their message or achieve their mission if they engage with students only in a small area of the College's campus.

81.   Plaintiffs cannot effectively communicate their message or achieve their mission without engaging with fellow students spontaneously.

82.   Plaintiffs' speech frequently addresses political issues. The unpredictable and fast-moving nature of political debate makes it especially important to Plaintiffs to be able to engage in spontaneous expressive activity. The more time elapses between the publication of breaking political news and Plaintiffs' ability to engage in expressive activity relating to that breaking news, the less effective that expressive activity becomes in achieving Plaintiffs' goals.

## II.   Defendants' Unconstitutional Speech Zone Policies

83.   Defendants regulate student speech on campus through their Speech Zone Policies. These policies relegate outdoor expressive activity to two small areas of campus, require at least two weeks advanced notice before speaking in those areas, require students to describe the content of their intended expression in advance to use the outdoor speech areas, and allow College officials to deny applications to use the outdoor speech areas without objective, comprehensive standards to restrain their discretion.

84.   The Speech Zone Policies include:

- The Free Speech Guidelines ("Guidelines"), a true, correct, and complete copy of which are attached to this Complaint as Exhibit 14;

- The Free Speech Agreement, a true, correct, and complete copy of which is attached to this Complaint as Exhibit 15;

- The Free Speech Table Reservation Form ("Reservation Form"), a true, correct, and complete copy of which is attached to this Complaint as Exhibit 16; and

- The 2019–2020 Student Clubs Manual ("Manual"), a true, correct, and complete copy of which is attached to this Complaint as Exhibit 13.

85. As detailed in subsequent paragraphs, Plaintiffs challenge, facially and as-applied, the provisions of Defendants' Speech Zone Policies regulating outdoor speech that:

- Limit all outdoor expressive activities on campus to two small, confined speech zones, Ex. 14 at 1–2; *see also infra* ¶¶ 94–100.

- Require students to seek permission to conduct expressive activity outdoors on campus at least two weeks in advance, *see* Ex. 13 at 52; *see also infra* ¶¶ 106, 111–13.

- Require students to provide College officials with a description of the content of their intended outdoor expressive activity, so that College officials may consider the content and viewpoint of the proposed activity in determining whether to approve it, *see* Ex. 16 at 2; *see also infra* ¶ 117.

- Give College officials unbridled discretion to reject a request to reserve an outdoor speech zone because of the content of the proposed expressive activity, *see infra* ¶¶ 118–22.

- Give College officials unbridled discretion to decide to close down outdoor expressive activity by students, see Ex. 15 at 1; *see also infra* ¶ 123–24.

- Give College officials unbridled discretion in deciding when and whether

to waive the requirements of the policies regulating outdoor expressive activity, *see* Ex. 14 at 1–4; *see also infra* ¶ 103.

86.  The College's campus is composed of various publicly accessible buildings and outdoor areas, including streets, sidewalks, open air malls, and park-like lawns spread over one hundred (100) acres. A true, correct, and complete copy of the Salem campus map is attached as Exhibit 17.

87.  These publicly accessible areas are commonly occupied by students and members of the public during the College's hours of operation.

88.  Students frequently use the outdoor areas of the College campus to engage in conversation about whatever topic is on their minds, including social, cultural, political, religious, and other issues.

89.  The Speech Zone Policies apply to "users," defined as any person "applying for use of a College facility for a free speech event or someone using College facilities for a free speech event." Ex. 14 at 1.

90.  Neither the Speech Zone Policies nor any other college document define "free speech event."

91.  The Speech Zone Policies regulate the "speech activity" of "users."

92.  The Guidelines define "speech activity" as "leafleting and distributing flyers, picketing, speech-making, demonstrations, petition circulation, and similar activities." Ex. 14 at 1.

93.  The Speech Zone Policies designate one indoor speech zone and two outdoor speech zones at the College's Campus. Ex. 14 at 2.

94.  The outdoor speech zones at the Salem campus "are located in the Old Quad between buildings 2 and 3 or the New Quad located in the center area circled by buildings 1, 2, 3, 8, and 9." Ex. 15 at 2. *See also* Ex. 17 at 1.

95.  The two outdoor speech zones make up about 60,000 square feet, or about 1.4 acres, which is less than 1.5% of the College's over-100 acre campus. A true, accurate,

and complete copy of Plaintiffs' measurement supporting this assertion is attached as Exhibit 18.

96.  The Guidelines require that: "Users shall contain their presentation and materials to the designated Free Speech areas." Ex. 14 at 2.

97.  Under Defendants' Speech Zone Policies, students are not allowed to display signs outside the designated speech zones. Ex. 14 at 2–4.

98.  Under Defendants' Speech Zone Policies, students are not allowed to distribute "petitions, circulars, leaflets or flyers, newspapers, and other printed matter" outside the designated speech zones. Ex. 14 at 3.

99.  The Speech Zone Policies require all students who wish to engage in outdoor expressive activity to contain their activity to the designated outdoor speech zones. Ex. 14 at 2.

100. The Guidelines provide that the "[n]ormal hours of presentation for the Free Speech areas shall be from 8:30 AM to 4 PM on days the College is open for business." Ex. 14 at 3.

101. Many campus facilities, including the Art Gallery and the Bookstore, are normally open after 4 PM.

102. The outdoor areas of the College's campus, including the designated outdoor speech zones, are commonly occupied by students after 4 PM on days the College is open for business.

103. The Guidelines do not set forth objective or comprehensive guidelines, standards, or criteria to limit the discretion of Defendants or other College officials in granting, denying, or modifying student requests to engage in expressive activities outside of the "normal" times the two outdoor speech zones are open.

104. The Speech Zone Policies require students to give advanced notice and receive prior permission before engaging in expressive activity in the outdoor speech zones.

105. The written Speech Zone Policies have inconsistent statements about the enforcement of the advanced notice requirement.

106. The Manual requires students to submit a Registration of Events form for all "events" "at least two weeks in advance." Ex. 13 at 22, 52.

107. The Guidelines state that students "are encouraged" to provide notice to the College's Public Safety Office and the Office of Student Retention and College Life before using the outdoor speech zones. Ex. 14 at 4.

108. The Reservation Form (states that students should submit the form for use of the "indoor free speech table *OR* one of our outdoor free speech areas" with one (1) week's notice. Ex. 16 at 1.

109. Mr. Sanchez sought to clarify these apparent discrepancies between the Guidelines, the Reservation Form, and the Manual by email correspondence with Defendant Gisbert. A true, correct, and complete copy of the email correspondence between Mr. Sanchez and Defendant Gisbert is attached as Exhibit 19.

110. Mr. Sanchez asked Defendant Gisbert to confirm that, if Students for Life's members "want to go anywhere on campus handing out pamphlets, holding signs, or whatever else, we are required to give you a two-week notice." Ex. 19 at 1.

111. Defendant Gisbert confirmed in his response that the College enforces its Speech Zone Policies to require two weeks' advanced notice before conducting any expressive activity in the outdoor speech areas.

112. In his email to Mr. Sanchez, Defendant Gisbert replied, "I believe we discussed using designated Free Speech areas on campus for any free speech related activities. As far as the 2-week notice, you are correct." Ex. 19 at 1.

113. By policy and practice, Defendants prohibit students from engaging in outdoor expressive activity anywhere except within the outdoor speech zones.

114. By policy and practice, Defendants require students to request permission before engaging in expressive activity within the outdoor speech zones.

115. By policy and practice, Defendants require students to submit their requests for permission to use the outdoor zones at least two weeks in advance of their intended expressive activity.

116. The Speech Zone Policies give Defendants unbridled discretion to review the content of students' speech when they request permission to use the College's outdoor speech zones.

117. The Reservation Form requires students to provide a "Description of Intended Activity," requiring students to notify the College in advance of the content and nature of their expression in order to receive approval. Ex. 16 at 2.

118. Neither the Reservation Form, nor any other part of the Speech Zone Policies specifies how College officials are to factor the "Description of Intended Activity" into their decision to grant or deny a request submitted in a Reservation Form.

119. Neither the Reservation Form, nor any other college policy, set forth objective or comprehensive guidelines, standards, or criteria to limit the discretion of Defendants or other College officials in granting, denying, or modifying student requests to engage in expressive activities.

120. The Speech Zone Policies give Defendants unbridled discretion to deny access to the speech zones.

121. In order to submit the Reservation Form to use the outdoor speech areas, students must also sign the Free Speech Agreement acknowledging that the student has read, understood, and accepted the Guidelines. Ex. 15 at 1.

122. The Free Speech Agreement provides that the College may cancel any event for violations of the Guidelines "as the College deems necessary." Ex. 15 at 1.

123. Neither the Free Speech Agreement nor any other College document sets forth any objective or comprehensive guidelines, standards, or criteria as to when Defendants or other College officials may deem it necessary to cancel an expressive activity, thereby giving these officials unbridled discretion to do so.

124. The Free Speech Agreement also provides that, if "Chemeketa's Public Safety Director has been asked to create a 'Safety Plan' for this Free Speech event," the student or organization hosting the event may be required to "suppl[y] to the college" the "reasonable estimated cost of the Safety Plan." Ex. 15 at 1.

125. Failure to supply the "reasonable estimated cost" will result in denial of the student's request for permission to use the outdoor speech zone for their intended expressive activity.

126. The College's requirement that students pay for the costs associated with a "Safety Plan" allows the College to consider the reaction of third parties to the students' intended speech as a potential ground for refusing to allow the speech or imposing substantial fees as a condition of allowing the speech.

127. Neither the Free Speech Agreement nor any other College document sets forth objective or comprehensive guidelines, standards, or criteria to limit Defendants' or other College officials' discretion in determining whether to ask the Safety Director to create a "Safety Plan" for an event or how the "reasonable estimated cost of the Safety Plan" shall be determined.

128. The absence of objective or comprehensive guidelines, standards, or criteria to limit Defendants' or other College officials' discretion in determining whether a Safety Plan must be created and, if so, how its reasonable estimated costs shall be determined enables Defendants or other College officials to use potential backlash by listeners as a factor in determining whether the event requires a Safety Plan and in assessing the reasonable estimated costs of the Safety Plan.

### III.  Defendants' Unconstitutional Silencing of Plaintiffs

129. On information and belief, Defendants adopted their current Speech Zone Policies on May 3, 2019. *See* Ex. 14 at 1.

130. By adopting these policies, Defendants reinstituted policies that they know or should know are unconstitutional because they had previously been forced to

rescind virtually identical policies under threat of litigation.

131. On February 3, 2020, Defendant Gisbert informed Mr. Sanchez that the Speech Zone Policies collectively operate to prohibit all outdoor expressive activity outside the outdoor speech areas and prohibit all expressive activities within those areas without two weeks' notice.

132. The College's Speech Zone Policies as set forth in the Guidelines, Reservation Form, Free Speech Agreement, the Manual, and as enforced by Defendants, restrict student speech in a fashion similar to a set of policies that the College previously adopted and enforced, but abandoned and revised in 2011.

133. The College abandoned and revised its policies because of a dispute arising from its enforcement of its prior policies against a student in October 2010. A true, correct, and complete copy of the College's older policies (the "2010 Speech Zone Policies") is attached as Exhibit 20.

### A. Defendants' 2010 Speech Zone Policies

134. The 2010 Speech Zone Policies required students to limit their public expressive activity to one "Free Speech Zone." Ex. 20 at 1.

135. The "Free Speech Zone" under the 2010 Speech Zone Policies was the same as the area the current Speech Zone Policies refer to as the "indoor Free Speech area." Ex. 20 at 1; Exhibit 14 at 2.

136. The 2010 Speech Zone Policies required students to schedule their expressive activity in advance with the Office of Student Retention and College Life. Ex. 20 at 1–2.

137. The 2010 Speech Zone Policies did not set forth objective or comprehensive guidelines, standards, or criteria to limit the discretion of Defendants or other College officials in granting, denying, or modifying student requests to engage in expressive activities

138. The 2010 Speech Zone Policies allowed students "wanting to conduct Free

Speech activities outdoors" to request permission from the Office of Student Retention and College Life but provided no standards for determining whether a request to engage in outdoor expression should be granted or denied, and otherwise prohibited all outdoor expressive activity. Ex. 20 at 2.

**B. Defendants' Rescission of their 2010 Speech Zone Policies**

139. The College rescinded the 2010 Speech Zone Policies after its enforcement of those policies led two students to threaten litigation against the College.

140. In October 2010, the College enforced the 2010 Speech Zone Policies against a student engaged in peaceful, orderly outdoor expression.

141. The student was ordered by College safety officers to leave the outdoor area where he was speaking and holding a sign and informed him that he could only engage in such expression within the speech zone designated by the 2010 Speech Zone Policies.

142. Afterwards, the student inquired with College officials about whether he could engage in further outdoor expression, in compliance with the provision of the 2010 Speech Zone Policies authorizing such requests.

143. In response to the student's requests, College officials stated that they would have to examine the content of any signs he proposed to carry before granting permission to engage in outdoor expression anywhere on campus.

144. The student retained counsel, who informed the college that several provisions of the 2010 Speech Policies, as applied to the student and on their face, were unconstitutional under the First Amendment.

145. The College agreed to revise the 2010 Speech Zone Policies and issued a new policy in November 2011 (the "2011 Speech Zone Policies"). A true, correct, and complete copy of the 2011 Speech Zone Policies is attached as Exhibit 21.

146. The 2011 Speech Zone Policies created the two outdoor speech areas existing under the College's current Speech Zone Policies. Ex. 21 at 1; Ex. 14 at 2.

147. The 2011 Speech Zone Policies, however, did not require students to provide advanced notice or receive permission to use the outdoor speech areas. Ex. 21 at 4.

148. The 2011 Speech Zone Policies did not prohibit spontaneous expression in the outdoor speech areas. Ex. 21 at 4.

149. The 2011 Speech Zone Policies did not require students to describe to College officials the content and nature of their intended expressive activity before using the outdoor speech areas. Ex. 21 at 4.

### C. Defendants' Reinstitution of Their Unconstitutional Speech Zone Policies

150. Defendants adopted the current Speech Zone Policies on May 3, 2019.

151. The College's current Speech Zone Policies, as interpreted and enforced by Defendant Gisbert, reinstate the 2010 Speech Zone Policies' prior permission requirement for expressive activity that the College abandoned.

152. The College's current Speech Zone Policies, as interpreted and enforced by Defendant Gisbert, impose new restrictions on the outdoor speech areas created by the 2011 Speech Zone Policies, including the requirement to request permission to speak in the outdoor speech areas two weeks in advance.

153. Plaintiffs challenge the current Speech Zone Policies on their face and as applied to them on the basis of the language of the written policies, the enforcement policy described by Defendant Gisbert, and the enforcement history of similar policies that the College revised after a dispute arising from the enforcement of those policies.

154. The enforcement history of the 2010 Speech Zone Guidelines illustrates how enforcement of the current Speech Zone Policies as described by Defendant Gisbert will unconstitutionally silence Plaintiffs.

### D. Defendants' Unconstitutional Speech Zone Policies Restrict Plaintiffs' Speech.

155. Defendants' unconstitutional restrictions on speech have prevented Plaintiffs from engaging in their desired expression on numerous occasions.

156. For example, on Wednesday, February 26, Students for Life hosted a debate on campus about the morality of physician-assisted suicide.

157. Students for Life applied for, and received, approval from the College to host the event indoors on campus.

158. In the days leading up to the event, Mr. Sanchez printed copies of fliers that he wished to hand out outdoors promoting the event but refrained from doing so as a result of the College's Speech Zone Policies, as explained and enforced by Defendant Gisbert.

159. Distributing the fliers individually by hand would have allowed Mr. Sanchez to individually engage interested students and more effectively promote Plaintiffs' event.

160. In late February, Plaintiffs also learned that the United States Senate was set to vote on the Born-Alive Abortion Survivors Protection Act and the Pain-Capable Unborn Child Protection Act.

161. Plaintiffs desired to distribute literature, speak with other students, display a poster showing fetal pain at different development stages, and table in the common outdoor areas of campus to share basic information about the Acts and about the dangers of late-term abortions.

162. Plaintiffs desired to do this before the vote was to take place to raise public awareness and influence political discussion leading up to the vote. Plaintiffs did not desire to speak about these things after the bill was voted on, since doing so would not influence the bill and Plaintiffs would thus be less likely to garner interest or support for their views.

163. Similarly, Plaintiffs desired to speak out against social media provider TikTok's ban of the pro-life group, Live Action, in late January 2020.

164. In response to TikTok's ban, Plaintiffs desired to express their pro-life views on Chemeketa's campus to show that pro-life groups like Students for Life and Live

Action have views that are compassionate, supported by science, and are in the best interests of women, families, and the unborn.

165. But due to this news (like other news) quickly growing stale, the College's two-week advance notice requirement prevented Plaintiffs from expressing their views on TikTok's ban in a timely manner.

166. Mr. Sanchez, Ms. Howell, and all of Students for Life's members wish to be able to carry literature promoting their pro-life message, advertising Student for Life's on-campus events, and describing the services of local pregnancy resource centers and to distribute these items between classes.

167. Mr. Sanchez, Ms. Howell, and all of Students for Life's members wish to engage other students in informal conversations about their pro-life message as the opportunity arises in the outdoor areas of the College's campus.

168. But Plaintiffs are confined to the two outdoor speech zones. This prevents Plaintiffs from speaking in high-traffic areas outside of the speech zone, such as outside of building 2 on campus or around the campus dining areas during meal times.

169. The College's Speech Zone Policies' requirement to obtain permission two weeks in advance for all outdoor expressive activities prevents Plaintiffs from engaging in their preferred speech on a regular basis and as particular opportunities arise.

170. Plaintiffs also wish to engage in spontaneous outdoor expression in response to legislation under consideration or other breaking news in order to mobilize student action through calls to legislators or local officials. The Speech Zone Policies' requirement to obtain permission two weeks in advance for all outdoor expressive activity prevents Plaintiffs from engaging in this expressive activity because the opportunity to mobilize effective student action will be lost in the two-week period between the breaking news and the ability to speak.

171. The College's current Speech Zone Policies are an absolute prohibition of Plaintiffs' peaceful, non-disruptive verbal expression, display of signs and images, and distribution of literature in the majority of the College's outdoor areas, including many areas with significant foot traffic.

172. The College's Speech Zone Policies prevent Plaintiffs from communicating their message with many students.

173. The College's Speech Zone Policies are an absolute prohibition of Plaintiffs' expression in all outdoor areas without two weeks' advanced notice.

174. The College's Speech Zone Policies, therefore, are an absolute prohibition of Plaintiffs' spontaneous expression, preventing Plaintiffs from engaging the student body effectively in response to breaking news or other time-sensitive events.

175. Mr. Sanchez and Ms. Howell are compelled by religious and moral convictions to express their message about the sanctity of life from conception to natural death, a compulsion which is totally frustrated by the geographic and temporal restrictions of the Guidelines.

176. Students for Life's membership is motivated by moral conviction against abortion and euthanasia that is totally frustrated by the geographic and temporal restrictions of the Guidelines.

177. Plaintiffs are also unable to determine whether the content of their speech or literature may impact the Defendants' decisions about whether to approve their requests to use the outdoor speech areas based on the language of the Guidelines.

## LEGAL ALLEGATIONS

178. At all times relevant to this Complaint, each and all of the acts and policies alleged herein were attributed to the Defendants who acted under color of a statute, regulation, custom, or usage of the State of Oregon (*i.e.*, under color of state law and authority).

179. Defendants knew of or should have known that they were violating the constitutional rights of all students and student groups by:

- Imposing unreasonable and unclear deadlines on students for providing advanced notice to use the outdoor speech areas;

- Unreasonably limiting all outdoor expressive activities to two outdoor speech areas;

- Prohibiting all spontaneous outdoor expressive activities everywhere on campus;

- Granting College officials unbridled discretion to approve requests to use the outdoor speech areas;

- Granting College officials unbridled discretion to enforce written Speech Zone Policies applicable to use of the outdoor speech areas;

- Granting College officials unbridled discretion to decide whether and how much to charge applicants for security in connection with a specific expressive activity; and

- Failing to define "free speech event" in the Guidelines and "event" in the Manual.

180. The policies and practices that led to the violation of Plaintiffs' constitutional rights remain in full force and effect.

181. Plaintiffs are suffering irreparable harm from Defendants' Speech Zone Policies.

182. Plaintiffs have no adequate or speedy remedy at law to correct or redress the deprivation of their rights by Defendants.

183. Defendants' actions and policies, as set forth above, do not serve any legitimate or compelling state interest and are not narrowly tailored to serve any such interests.

184. Defendants have deprived, and continue to deprive, Plaintiffs of their clearly established rights under the United States Constitution, as set forth in the causes of action below.

185. Unless the policies and conduct of Defendants are enjoined, Plaintiffs will continue to suffer irreparable injury.

186. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to appropriate relief invalidating Defendants' challenged policies and related conduct. Additionally, Plaintiffs are entitled to nominal and compensatory damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

**FIRST CAUSE OF ACTION**
**First Amendment: Freedom of Speech and Assembly**
**(42 U.S.C. § 1983)**

187. The allegations contained in paragraphs 1–186 are incorporated herein by reference.

188. The First Amendment rights of free speech and expression extend to campuses of state universities and community colleges.

189. The sidewalks and open spaces of the College's campus are designated public fora—if not traditional public fora—for speech and expressive activities by students enrolled at the College.

190. Defendants' Speech Zone Policies are unconstitutional prior restraints against Plaintiffs' expressive activity.

191. Defendants' enforcement of the two-week notice requirement in the Speech Zone Policies prevented Plaintiffs from engaging in outdoor speech promoting an approved event on campus.

192. Defendants' enforcement of the two-week notice requirement in the Speech Zone Policies continues to prohibit all outdoor spontaneous expression on the College's campus.

193. Defendants' Speech Zone Policies confer unbridled discretion upon the College's officials to discriminate against student speech based on its content or viewpoint.

194. Prior restraints on speech violate the First Amendment when they confer unbridled discretion on officials to permit or prohibit speech based on its content or viewpoint.

195. The Speech Zone Policies require College officials to consider the content of speech when determining whether to grant permission to use the designated speech areas, yet it contains no objective or comprehensive guidelines, standards, or criteria to limit the discretion of Defendants or other College officials in granting, denying, or modifying student requests to engage in expressive activities.

196. In enforcing the 2010 Speech Zone Policies, College officials considered the content of students' proposed outdoor expression in determining whether to permit that expression.

197. Defendants' Speech Zone Policies unconstitutionally discriminate based on viewpoint and content because they subject students to fees based on security costs which may be determined by assessing the viewpoint of the proposed speech and any potential negative reaction to it.

198. Defendants' Speech Zone Policies do not satisfy strict scrutiny because they support no compelling government interest and they are not narrowly tailored to meet any such concerns.

199. Defendants' Speech Zone Policies also fail to satisfy intermediate scrutiny. Neither the two-week advance permission restriction, the hours restriction, nor the geographical speech zone restrictions are narrowly tailored to serve a significant governmental interest, and the restrictions do not leave open ample alternative avenues of communication.

200. Defendants' Speech Zone Policies are also overbroad because they prohibit

and restrict protected expression.

201. Defendants' Speech Zone Policies are overbroad because the term "event" in the Manual, both facially and as applied, prohibits a substantial amount of constitutionally protected speech by prohibiting students from engaging in expressive activities in the public fora of campus outside the outdoor speech areas, requiring students to seek prior permission from a College official two weeks in advance, and requiring students to confine their expressive activities to the outdoor speech areas.

202. The overbreadth of Defendants' Speech Zone Policies chills the speech of Plaintiffs and students not before the Court who seek to engage in private expression (including public speaking, marches, conversations, and literature distribution) in the open, outdoor areas of campus.

203. Defendants' Speech Zone Policies violate Plaintiffs' right to free speech as guaranteed by the First Amendment to the United States Constitution.

204. Therefore, the College's Speech Zone Policies are unconstitutional on their face and as applied to Plaintiffs under the First Amendment of the United States as applied to the State of Oregon by the Fourteenth Amendment.

### SECOND CAUSE OF ACTION
### Fourteenth Amendment: Due Process
### (42 U.S.C. § 1983)

205. The allegations contained in paragraphs 1–186 are incorporated herein by reference.

206. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to due process of law and prohibits Defendants from promulgating and employing vague standards that allow for viewpoint discrimination in Defendants' handling of Plaintiffs' speech.

207. The government may not regulate speech based on policies that permit arbitrary, discriminatory, and overzealous enforcement.

208. The government may not regulate speech based on policies that cause

persons of common intelligence to guess at their meaning and differ as to their application.

209. Defendants' Speech Zone Policies cause ordinary persons of common intelligence to guess at their meaning because the Policies apply to "users," but the meaning of "user" depends on the meaning of a "free speech event" (in the Guidelines) or an "event" (in the Manual), terms which neither the Speech Zone Policies or any other College documents define.

210. The government also may not regulate speech in ways that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

211. Defendants' Speech Zone Policies regulate "speech activity," which includes "leafleting and distributing flyers, picketing, speech-making, demonstrations, petition circulation, and similar activities."

212. Defendants' prohibition on "speech-making" and all "similar activities" does not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

213. Defendants' restrictions on "events" similarly do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

214. Defendants' Speech Zone Policies contain no objective criteria to guide administrators when applying the policies to reservation requests from individual students or registered student organizations.

215. The College's enforcement practice proves that Defendants may exercise their discretion to set aside written policies and impose greater or lesser restrictions on student speech than the written policies require or allow.

216. Defendants' Speech Zone Policies are impermissibly vague and ambiguous. Thus, they are incapable of providing meaningful guidance to Defendants and other

College officials, and they force students to guess as to whether expression that the First Amendment protects is in fact allowed on campus.

217. Defendants' written policies, procedures, codes, practices, and customs are impermissibly vague and ambiguous and allow Defendants to suppress and discriminate against disfavored speech or expression on the College's campus, violating Plaintiffs' right to due process of law under the Fourteenth Amendment.

218. The Defendants' Speech Zone Policies do not give Plaintiffs adequate notice as to what speech or conduct is actually prohibited, especially given the College's failure to consistently enforce the prohibition on expressive activities in areas outside the designated outdoor speech zones.

219. Defendants' Speech Zone Policies prohibit constitutionally protected speech without providing any objective guidelines by which Plaintiffs can guide their behavior, or by which administrators may objectively and precisely apply the policies.

220. The vagueness of the Speech Zone Policies has the effect of chilling the speech of all students at the College, including the Plaintiffs.

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants, and provide Plaintiffs with the following relief:

A. Declare that the Speech Zone Policies are facially unconstitutional and violate the First and Fourteenth Amendments to the United States Constitution;

B. Declare that the Speech Zone Policies are unconstitutional as applied to Plaintiffs, violating their rights under the First and Fourteenth Amendments to the United States Constitution;

C. Enjoin the Defendants, their agents, employees, officials, or any other person acting in concert with them or on their behalf, from enforcing the two-week permission or speech zone restrictions in the Speech Zone

Policies;

D. Award compensatory and nominal damages to Plaintiffs against the individual Defendants in their individual capacities in an amount to be determined by the evidence;

E. Award the costs and expenses of this action to Plaintiffs, including reasonable attorneys' fees, in accordance with 42 U.S.C. § 1988 and other applicable law;

F. Grant any other relief this Court deems equitable, just, and proper; and

G. Retain jurisdiction of this matter as necessary for enforcing this Court's orders.

Respectfully submitted this 5th day of May, 2020.

*s/ Daniel A. Hill*
Daniel A. Hill
OR Bar No. 963072
daniel.hill@adamshillhess.com
ADAMS, HILL & HESS
339 Washington St. SE
Salem, OR 97302
Telephone:  (503) 399-2667
Facsimile:  (503) 399-1758

Michael R. Ross*
Tyson C. Langhofer*
mross@ADFlegal.org
tlanghofer@ADFlegal.org
ALLIANCE DEFENDING FREEDOM
20116 Ashbrook Pl., Ste. 250
Ashburn, VA 20147
Telephone:  (571) 707-4655
Facsimile:  (571) 707-4656

David A. Cortman*
dcortman@ADFlegal.org
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd., Ste. D-1100
Lawrenceville, GA 30043
Telephone:  (770) 339-0774
Facsimile:  (770) 339-6744

*Attorneys for Plaintiffs*

*Pro Hac Vice application concurrently filed.*

### DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by jury for all matters so triable herein.

*s/ Daniel A. Hill*

Daniel A. Hill
*Attorney for Plaintiffs*